UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division


------------------------------:
                              :
UNITED STATES OF AMERICA       :
                              :
                              :
    -vs-                       :    Case No. 1:16-cr-228
                              :
                              :
RUSLANS BONDARS,               :
              Defendant.       :
                              :
------------------------------:




SENTENCING HEARING


September 21, 2018


Before:   Liam O'Grady, USDC Judge




APPEARANCES:

Kellen S. Dwyer, Laura Fong, and C. Alden Pelker,
Counsel for the United States

Jessica N. Carmichael and Yancey Ellis,
Counsel for the Defendant

The Defendant, Ruslans Bondars, in person

1          THE CLERK:  The Court calls case 1:16-cr-228, the

2    United States of America versus Ruslans Bondars for sentencing

3    and motions.

4          May I have the appearances, please, first for the

5    Government.

6          MR. DWYER:  Good morning, Your Honor.  Kellen Dwyer

7    for the United States.  With me is Laura Fong from the U.S.

8    Attorney's Office.  As well as Alden Pelker from the Computer

9    Crimes and Intellectual Property Section.

10         And Ryan Dickey is also here, I don't know if he is

11   going to come up, but he is from CCIPS as well.

12         THE COURT:  Yeah, I remember him vaguely.

13         MR. DICKEY:  Good morning, Your Honor.

14         THE COURT:  Good morning to you all.

15         MR. CARMICHAEL:  Good morning, Your Honor.  Jessica

16   Carmichael and Yancey Ellis on behalf of Mr. Bondars, who is

17   present with the assistance of an interpreter.

18         THE COURT:  All right, good morning to each of you.

19         Let's swear our interpreter, please.

20         NOTE:  The interpreter is sworn.

21         THE INTERPRETER:  For the record, Roman Volsky, U.S.

22   court professionally qualified Russian language.  Good morning,

23   Your Honor

24         THE COURT:  Good morning to you, and thank you for

25   serving with us again today.

1      THE INTERPRETER:  Thank you, Your Honor.

2      THE COURT:  All right.  This comes on for sentencing,

3  but also a motion by Mr. Bondars for a judgment of acquittal or

4  for a new trial under Rules 29 and 33.  And why don't we begin

5  there.

6      Ms. Carmichael, I have read the pleadings, and I will

7  hear anything else you would like to say.

8      MS. CARMICHAEL:  Your Honor, I don't have too much to

9  add other than what's in our pleadings.  There is just one

10 factual issue that I wanted to clear with the Court.  And that

11 is this issue of the Ulbricht case and whether or not the

12 defense argued for legitimate purposes in the Ulbricht case.

13     It seems that defense and the Government were at an

14 impasse on this particular issue.  I read the quote from the

15 Government's brief that likened it to eBay for drugs, and still

16 I did not find that that factually meant that the defense was

17 arguing that there were legitimate users to the service.

18     I contacted the defense lawyer, the lead defense

19 lawyer for Ulbricht who I have spoken with before on other

20 cases, and I can just proffer to the Court that he said that in

21 their defense they never argued to legitimate transactions that

22 would have negated the intent in that case.  In that case it

23 was an identity defense.

24     So I wanted to respond to that because it went

25 directly to the Government's argument that Mr. Bondars was

1   contesting that his company or his service was too big to jail,

2   it created this perverse incentive.  And, Your Honor, we

3   dispute that because we think that the inquiry first begins

4   with not how many users there are, but whether or not there

5   were any legitimate users.  And if there are no legitimate

6   users in a service, then every agreement would be illegal, you

7   wouldn't have to know the date, time, place of the agreement to

8   commit the crime.

9          When you move towards a company that has both

10  legitimate and illegitimate users, that's when we're arguing

11  that you need to get more into the realm of knowing not

12  specifics of a crime, but knowing something more than they have

13  the word "hacker" in their e-mail address.

14         And so, we just think that our position sort of

15  protects all online businesses because certainly large online

16  businesses have legitimate and illegitimate users and,

17  therefore, there is a heightened need to know more about the

18  agreement that was formed.

19         THE COURT:  All right.  Thank you, Ms. Carmichael.

20         Mr. Dwyer.

21         MR. DWYER:  Thank you, Your Honor.

22         I think just to the last point, I think myself and

23  defense counsel are both right to an extent.  Defense counsel

24  is referring to the trial defense, which is, it wasn't me, I

25  wasn't the one who ran Silk Road.

1           What I was referring to is the motion to dismiss that

2    happened before trial, he first made the argument that this is

3    not a criminal conspiracy because we're just like eBay, it

4    could be used to buy or sell anything, and people buy and sell

5    drugs, but I am not responsible for that.

6           But, I mean, to the extent that defense counsel is

7    suggesting that it would have been a defense in Silk Road to

8    say that, well, maybe a thousand people are using this to buy

9    and selling drugs and that was the intent, but as long as one

10   person isn't or as long as you don't prove that everyone was

11   engaged in a crime, that it's not a conspiracy, that's

12   incorrect as a matter of law.  Conspiracy only requires two

13   people to agree to an unlawful agreement.

14          And then finally, I will say in our motion papers we

15   focus on the legal point that we only had to show two people

16   for conspiracy.  But I will say that there was more than enough

17   circumstantial evidence at trial for a reasonable juror to

18   infer that while the entire purpose of this site is to promote

19   hacking, it was advertised exclusively to hackers, had a

20   reputation among the hackers who testified as being for crime,

21   so a reasonable juror could say, well, these 30,000 member they

22   got, I'm going to infer that many of them, if not most, were

23   using it for its intended purpose.

24          THE COURT:  All right, thank you.

25          Well, I looked at the Ulbricht case after it was

1    cited.  And really the defense is very close to the Sony versus

2    Grokster case which deals with infringement and having

3    infringing and non-infringing uses.  It's an interesting theory

4    to the extent it was proposed, but it doesn't apply to the

5    criminal statutes here.

6          And the evidence at trial that the jury considered in

7    finding Mr. Bondars guilty of three out of the four offenses

8    was specifically for the criminal involvement in this

9    enterprise and Mr. Bondars' role in it, and the many e-mails

10   back and forth between he and Mr. Martisevs, which demonstrated

11   knowledge of the nature of their business and the unlawfulness

12   of it.  And the marketing strategy.  The knowledge that Mr.

13   Bondars had about the arrest of the customer from the U.K.

14   There was a significant amount of evidence which demonstrated

15   knowledge of the criminal nature of the customers who were

16   using this Scan4you service.

17         So I am going to deny the motion both for acquittal

18   and a new trial.  And, of course, your exception is noted.

19         There are multiple objections to the presentence

20   report.  The calculation of the loss amount, of course, is the

21   most significant, but also the leadership role.  And why don't

22   I hear from you, Ms. Carmichael, on that at this time.

23         MS. CARMICHAEL:  Thank you, Your Honor.

24         On the factual objections, I forgot to include the

25   factual objection to -- in my memo I forgot to include the

1    factual objection to the 404(b) evidence being presented in the

2    presentence report as related to the offense.  I just wanted to

3    add that.

4            With respect to the remaining Guidelines objections,

5    Your Honor, I don't have significant argument on those other

6    than what's already been presented in the briefs.

7            The only aspect that I wish to say more on is on the

8    acceptance of responsibility aspect in response to the

9    Government's reply brief.  That is, that making legal

10   challenges to the Government's case, which we did in this

11   matter, and arguing the legal challenges to the foreseeability

12   of the loss amount, which, Your Honor, the jury did agree in

13   small part with the defense on one count, those are not taking

14   positions that the Government is alleging in its brief, that

15   Mr. Bondars is categorically denying everything to do with

16   Scan4you.

17           Mr. Bondars through counsel admitted that he was the

18   technical director for Scan4you.  He admitted that he knew who

19   this service was being marketed to.

20           And, Your Honor, I think also worth noting is that

21   through counsel at trial Mr. Bondars also acknowledged that he

22   was not completely forthcoming with the FBI when he was first

23   involved.  And I can tell the Court that we are taking the

24   slightly unorthodox step of having the Court hear from Mr.

25   Bondars at the end of sentencing here today as well.

1          So that's what I would like to say on acceptance,

2    Your Honor.  The rest of the Guidelines objections we will

3    submit on our briefs.

4          THE COURT:  All right, thank you.

5          Do you want to respond?

6          MR. DWYER:  Just briefly, Your Honor.

7          This is not a case where the defendant admitted all

8    the facts and just argued legal objections.  He has not

9    admitted the core of the conduct, which is that he designed

10   Scan4you for the purpose of assisting computer hacking.  He has

11   not admitted that.  Counsel has not admitted that.  Maybe he

12   will admit that later today.

13         He also hasn't taken any responsibility for all the

14   other hacking schemes that are documented in the PSR.  He

15   hasn't taken responsibility for creating doorways that

16   redirected Web traffic to malicious sites.  Maybe he will take

17   responsibility today.

18         He hasn't taken responsibility for writing encrypting

19   malware.  For hacking tens of thousands of computers in the

20   United States, or using the SpyEye botnet, for using a Bitcoin

21   miner, for his work for EvaPharmacy.

22         And I guess I will hold off on the factors, but this

23   is a significant concern.

24         MS. CARMICHAEL:  Your Honor, may I respond to the

25   doorways?

1          THE COURT:  Yes.

2          MS. CARMICHAEL:  These other 404(b) argument -- well,

3     404(b) evidence the Government submitted, I would just like the

4     Court to consider the fact that the FBI and the Latvian police

5     seized every single electronic device it could get its hands on

6     at Mr. Bondars' place of employment as well as Mr. Bondars'

7     residence.  And the end result of that was that Mr. Bondars

8     chatted about these endeavors, but these are uncharged,

9     unproven conduct that the Government is arguing here today.

10          And I ask the Court not to rely on uncharged,

11     unproven conduct in its sentencing or in the Guidelines

12     decisions.

13          THE COURT:  All right.  Well, I think the Guidelines

14     have been properly calculated.  The loss amount, of course, is

15     astronomical, but it's a result of Mr. Bondars having aided and

16     abetted a significant number of malware developers who were

17     very interested in escaping the antivirus security features of

18     all the companies that they were hacking, and why Scan4you

19     became the most popular of these software programs in the

20     world.

21          And the damage caused has been properly identified

22     and assessed to the extent that it could be.  And I find that

23     the Probation Office has properly reviewed the evidence and

24     properly calculated the loss amount.

25          And also Mr. Bondars' leadership in this conspiracy.

1    And there is no doubt that he was a leader of the technical

2    side of Scan4you.  And that it involved five or more

3    participants.  And that it created havoc in the community and

4    was very extensive.

5              So under 3B1.1, the leadership role, I feel it was

6    also proper.  And the rest of the Guideline calculations follow

7    the clear requirements under the Guidelines.

8              The Guidelines, as a result, are way over the 43,

9    which is the total offense level that can be calculated.  He's

10   a Criminal History Category III.  The restricted Guideline

11   range because of the maximum statutory provisions for the three

12   charges is 420 months.  And supervised release of one to

13   three years on each of those charges.

14             Mr. Bondars, did you go over the presentence report?

15             THE DEFENDANT:  (In English)  Yes, Your Honor.

16             THE COURT:  Any other corrections or additions you

17   want made at this time?

18             THE DEFENDANT:  (In English)  No, Your Honor.

19             THE COURT:  All right.  Have a seat then, sir.

20             I will file the report without amendment.  As I have

21   said, I have read the submissions of the parties, those on the

22   record and those submitted under seal recently.

23             Mr. Dwyer, I will hear anything you would like to say

24   about sentencing at this time.

25             MR. DWYER:  Thank you, Your Honor.  On the first

1  point about all his other hacking schemes that were documented

2  in the PSR and our papers, this is not someone just discussing

3  in theory, we could do this.  They are not discussions, they

4  are evidence that it happened.

5         Like there is one, which is on page 16 of the Skype

6  chats, in the PSR, 67, Martisevs says:  Can you give me an

7  approximate number of rabbits we have online per day?

8         And we heard that rabbits means victim computers.

9  Bondars says:  We had 15,000 yesterday.  It is usually less on

10  weekends, otherwise there are about 20,000.

11         This is not just talk.  It's evidence that it

12  happened.  And the chats don't just speak for themselves.  Mr.

13  Martisevs testified, and as the Court knows, walked through

14  them line by line and explained what was going on.  Which is

15  exactly what it sounds like, they were committing crimes.

16         That is certainly relevant for the Court's sentencing

17  factors, particularly whether somebody is an ongoing threat to

18  the United States.  And when you have someone who is this

19  innovative and has been doing this many crimes for this long,

20  that is a major concern.

21         Now, the defense counsel has pointed out in their

22  briefs that they say, well, Mr. Bondars has matured since 2008.

23  There is not evidence of that.  The evidence is that on the day

24  he was arrested, the last day he was free, the Latvian police

25  found $30,000 in cash, $100 bills, in his apartment.  That is

1    not someone who has moved on from crime.  That is someone who

2    is still very much involved.

3              When he gets back to Latvia, he is not going to have

4    a Probation officer.  The United States' ability to monitor him

5    is going to be very limited.  So the Government is very

6    concerned about an ongoing threat here.

7              And then finally, I can't emphasize enough his

8    contribution to organized computer crime.  The Court received

9    letters this week from Symantec and Trend Micro, which I think

10   did a great job of explaining just how Scan4you undermined and

11   impeded their ability to protect client computers.

12             But actions speak louder than words.  The Court also

13   heard a lot from defense counsel at trial about how four years

14   ago Trend Micro conducted their own investigation into Scan4you

15   and went to significant lengths to do that.  But why would

16   Trend Micro do that?  Trend Micro is one of the largest

17   antivirus companies in the world, it has $40 billion a year

18   roughly in revenue.  Why is it spending its time investigating

19   Scan4you, a company with two people?

20             The answer is because Scan4you was undermining the

21   ability of Trend Micro and every other antivirus company to do

22   their job and to protect their clients.

23             This is a crime with systemic harm, and we would ask

24   that the Court's sentence reflect that.

25             THE COURT:  All right, thank you.

1          All right, Ms. Carmichael.

2          MS. CARMICHAEL:  Your Honor, I could spend awhile

3  talking about the Guidelines and nitpicking at the underlying

4  lack of empirical basis for those.  I outlined that in my

5  brief, Your Honor, and I am not going to spend time talking

6  about the Guidelines this morning.

7          And I am not going to do that because the Court has

8  before it data points in this case that are far more relevant,

9  far more applicable to Mr. Bondars' situation than the

10  Guidelines.  And those data points are the sentences of others

11  involved in this very case.

12          We have Shames, who received six months.  Huddleston,

13  who received 48 months.  Vartanyan, who received 54 months.

14  Belarozov, who received 60 months.  And the person known as

15  reFUD.me who received two years in the U.K.

16          And the Government's argument with respect to those

17  sentences is that they are not similarly situated because those

18  individuals pled guilty and Mr. Bondars went to trial.  Your

19  Honor, in essence, what the Government is saying is that

20  pleading guilty -- or going to trial and not pleading guilty is

21  worth an extra 30 years in prison.

22          Your Honor, the Sixth Amendment right to trial would

23  be completely undermined if going to trial meant an extra

24  30 years in prison.

25          And I also wanted to talk just for a minute on the

1  cases that the Government cited where those defendants went to

2  trial.  Those cases are not similar to Mr. Bondars' situation.

3  We have one case that the person laundered $250 million, taking

4  proceeds of illegal activity.  Another person who ran a Web

5  site that sold stolen credit card numbers, including ones that

6  he himself stole via hacking.  Another one who developed and

7  sold a massive banking trojan, sold malware itself.  And then

8  another one that offered 40,000 stolen credit card numbers with

9  a botnet -- and a botnet with 500,000 infected computers.

10  Those cases are not similar to the conduct that Mr. Bondars

11  engaged in.

12          Your Honor, after the Government submitted its reply

13  brief, I did look up some DoJ press releases of other

14  individuals involved in cyber crimes who went to trial, Your

15  Honor.  And I found three cases in particular.  Mittesh Das,

16  who went to trial, was ordered to pay $1.5 million in

17  restitution.  He, after a jury trial, was sentenced to

18  24 months imprisonment.  He submitted malicious code to servers

19  that handled nearly 200,000 U.S. Army Reservists' employment

20  and personnel actions.  That person got 24 months.

21          We have Fraser Thompson, who had a three-week trial,

22  and he ripped off everyday cell phone users at $10 a month,

23  netting over $100 million in illegal profits.  And he

24  personally received $1.5 million for that.  He was sentenced to

25  five years, Your Honor.

1          And finally, Your Honor, there was Nicholas -- excuse

2     me, Fabio Gasperini, and he spread malicious software onto

3     computer servers in the United States and around the world and

4     hacked into them.  He had a botnet that encompassed over

5     100,000 computers around the world, and he was sentenced to,

6     after a trial, Your Honor, to one year of imprisonment.

7          So, Your Honor, there are trials that have resulted

8     in excessive time, and there have been trials that have

9     resulted in reasonable amounts of time.  Simply going to trial

10    should not have the weight of 30 years, Your Honor.

11         And I wanted to talk just for a second, Your Honor,

12    about the decision to go to trial.  Mr. Bondars went to trial

13    because his lawyers advised him to go to trial.  We advised Mr.

14    Bondars that we could not reach a plea agreement that we

15    believe incentivized pleading and that he should proceed to

16    trial.

17         The Government touched on this a little bit about

18    cooperation.  I am afraid they would have been woefully

19    disappointed in Mr. Bondars' cooperation.  Like many of these

20    online individuals, his communications, all of the information

21    that he had was online.  And the Government had all of that

22    communication.  And his server, and the Government had that

23    already as well.

24         Going to trial, we made arguments about the legal

25    challenges to the case, that the Government legally had not

1  made its case, and which the jury found for the defense on one

2  count, that the Government had not legally made its case.  And

3  I said this before about Mr. Bondars, he did not deny that he

4  ran Scan4you.  He did not deny that he knew who it was

5  advertised to.  He did not deny that he was not forthcoming

6  with the FBI.

7          And he didn't take the stand, Your Honor.  He did not

8  take the stand and he did not lie to this Court.  And I think

9  that that should be worth something, Your Honor.  Making legal

10 challenges that the Government can't make their case is not the

11 same thing as taking the stand and lying.

12         In the Government's brief the Government spends pages

13 and pages detailing the amount of damage that the Citadel

14 malware caused.  And clearly the Citadel was malware that

15 caused a lot of damage.

16         Your Honor, the Court heard from two actual

17 perpetrators of the Citadel, someone who helped develop that

18 malware, and someone who he himself actually used and deployed

19 that malware to hack.  And those individuals received five

20 years, Your Honor, the actual perpetrators of the Citadel.  And

21 those individuals were Russian citizens, people who cannot be

22 supervised outside of the United States.

23         And the same thing with the Limitless Logger, Your

24 Honor.  The Government spends pages and pages detailing the

25 damage caused by Limitless Logger.  The Court has had before it

1  two of perpetrators, the actual developer of the Limitless

2  Logger and someone who distributed the Limitless Logger, and

3  that individual got six months and the other individual got

4  48 months.

5        Mr. Bondars was convicted of aiding and abetting

6  these individuals.  He, as an aider and abettor, the Government

7  is asking for seven times the highest sentence of one of the

8  actual perpetrators of the crime.

9        And I also find it slightly bizarre logic, Your

10  Honor, that a person such as Belorossov, who actually deployed

11  and used the Citadel, is only responsible for the computers

12  that he infected and the loss associated with those computers

13  that he infected, but that an aider and abettor of Mr.

14  Belorossov, a convicted aider and abettor of Mr. Belorossov is

15  sentenced higher than he himself.

16        Finally, Your Honor, I just wanted to speak a little

17  bit about the punishment, deterrence, and remorse in this

18  situation.  And what Mr. Bondars can say later on this morning

19  is somewhat limited because of a possible appeal, but he will

20  talk to the Court, Your Honor.  And I can represent that he

21  feels terribly about the situation, about having developed

22  Scan4you.  And he feels terribly knowing now the damage that it

23  has caused.

24        And I can also represent, Your Honor, that this

25  experience has been extremely emotionally difficult for him.

1   It has deterred him from ever coming close to engaging in any

2   sort of conduct like this again.  He was pulled from his home

3   country, taken to a foreign place where he didn't speak the

4   language, to be tried in a foreign system that he didn't

5   understand and couldn't even understand the words.  And in that

6   sense, he has already been punished more harshly than Zachary

7   Shames and Taylor Huddleston.

8           And I would also like Your Honor to keep in mind when

9   fashioning a sentence in this case that Mr. Bondars is not

10  eligible for any of the Bureau of Prisons' programs that a

11  United States citizen would be eligible for, such as RDAP,

12  which takes time off of a prisoner's sentence.  He is not

13  eligible for those programs.

14          He is also going to spend time in ICE custody after

15  he is released from incarceration.  And I would ask the Court

16  to consider that time as well.

17          But he has learned an extremely difficult lesson here

18  today.  He misses his family.  He wants to go home.  He wants

19  to be able to go back to his job, Your Honor.

20          And I want to say something about that as well.  I

21  was in the Court, Your Honor, when the Court sentenced Zachary

22  Shames.  And I know that Mr. Shames submitted a lot of letters

23  on his behalf, and in particular --

24          THE COURT:  He was 15 years old.  You know, there is

25  different world.  Go ahead.

1    MS. CARMICHAEL:  Well, Your Honor, I know that

2    something that was important to the Court in that situation was

3    that he had the support of his job, and that he was still

4    valued there, and that they still wanted him there.

5         And in that sense, Your Honor, Mr. Bondars does have

6    that as well.  He is not a lost cause.  He is not someone who

7    has nothing better to do with his time than to engage in any

8    type of illicit behavior.  He is someone who is successful and

9    respected.  And the letters show that even his subordinates

10   find him to be very compassionate as a boss and kind and

11   generous.

12        And at this point, Your Honor, he could still go back

13   to that job.  And we would ask that the Court consider that.

14        The Government argues that Mr. Bondars should be

15   given a higher sentence because he is a foreign national and he

16   can't be supervised once he is released.  Your Honor, I would

17   actually challenge that premise.  There is probation in Latvia.

18   There are also MLATs.  I'm sure that if the Government wanted

19   to find a way to keep tabs on Mr. Bondars, it could do so.

20        But secondly, Your Honor, I think that this logic is

21   a little bit convoluted in a sense because Mr. Bondars was in

22   Latvia.  It was the United States that came and took Mr.

23   Bondars from Latvia and brought him here to prosecute him.  And

24   then the Government argues that because he is in the United

25   States, he should be punished harsher.  And I would like the

1  Court to consider that as well.

2          And I pointed out earlier that Mr. Belorossov and Mr.

3  Vartanyan received five years.  And those are Russian citizens

4  who clearly cannot be supervised once those individuals are

5  released.

6          Your Honor, at its very core, the sentence that the

7  Government seeks is an astronomical disparity from the others

8  that have been sentenced in this case.  And I would submit that

9  those sentences in this case, those have been thoughtful

10  sentences commensurate with the conduct that Mr. Bondars was

11  convicted of.

12         And I think that's a perspective that needs to be

13  brought to the table, Your Honor, because we have seen

14  individuals come before this Court who were convicted of

15  joining ISIS, individuals who were trying to blow up the United

16  States Capitol, MS-13 members, enticing minors, people

17  producing child pornography, all getting less time, far less

18  time than the Government is asking for in this case.

19         This is not a violent offense.  There are no lives in

20  danger here.  There are no physical harms to victims.  And

21  that's not to minimize the financial damage that was caused

22  here, but I think there needs to be a little bit of perspective

23  in this case because this is something that with a little time,

24  effort, and money these companies can recover from.

25         So, Your Honor, we would ask that Mr. Bondars be

1    sentenced to a period of 18 months.

2              THE COURT:  All right.  Thank you, Ms. Carmichael.

3              All right, Mr. Bondars, this is your opportunity to

4    tell me anything you would like to before I sentence you.

5              Please come to the podium, sir.

6              THE DEFENDANT:  Good morning, Judge O'Grady.  I have

7    been in your courtroom many times, but this is the first time I

8    have been able to speak with you.  I thank you for the

9    opportunity to speak.

10             THE COURT:  Let me stop you there for one second

11   before I forget.  You went to trial on a plea of not guilty.

12   You were found guilty of three of the counts, 1, 2, and 4.  And

13   you have a right to appeal to the Fourth Circuit Court of

14   Appeals that finding and all the rulings that I made during

15   that trial, as well as any sentence that I impose.

16             So what you say here this morning in court, if there

17   was a retrial, if the case came back for a retrial, if you said

18   something that might hurt the case when it came back, you need

19   to make sure you understand that whatever you say here this

20   morning could be used against you in any other court

21   proceeding.  Okay?

22             THE DEFENDANT:  I understand you.

23             THE COURT:  All right.  Then please go ahead.

24             THE DEFENDANT:  Thank you, Your Honor.

25             As you know, I was technical developer of Scan4you

1  Web site. I started this Web site with my friend Yuri to earn

2  some extra money.

3       I punish myself for the lack of foresight in creation

4  of Scan4you Web site. I am very sorry that Web site created by

5  me lead to such big consequence. I feel ashamed that some of

6  the Web site users used it for making such terrible damage.

7       I imagine that people like Mr. Smiley, Mr. Lee, and

8  Mr. Caple felt scared and unsafe when they learned that someone

9  had taken their personal information. I'm sorry for that too.

10      In the beginning, Scan4you was so small, but it got

11  much bigger, and it seemed it happened very fast. Time changed

12  so many things.

13      I have spent the past two years far, far away from my

14  family, my friends, people who I love, people who love me. The

15  situations that I got into have been very stressful for me and

16  for the people I love, and show me the value of this love and

17  how easy it is to lose this all.

18      I am sorry for my family for causing such pain. I

19  hope that whenever I get out of the jail and return home, my

20  job will be still available for me and I can live a normal

21  life. I plan to get married and I have a family -- no. And

22  have a family. I hope that you give me this chance as soon as

23  you can.

24      Thank you, Your Honor.

25      THE COURT: All right, thank you. Please remain

1    there.

2            So I said you have a right to appeal, and you must

3    file a notice of appeal.  And speak to Ms. Carmichael about

4    that after today's proceedings.

5            You're a very bright young man, and you chose to

6    spend seven or eight years building this software program,

7    Scan4you, and to have Mr. Martisevs market it and do other of

8    the business functions.  And you built it into the largest

9    criminal support for hacking forums in the world, with I guess

10   up to 30,000 members before you were taken down.

11           And there was no question for the jury and no

12   question in my mind that you knew the harm that you were

13   causing.  The e-mail traffic between you and Martisevs, every

14   member of the public's awareness of the harm that these

15   different hacking enterprises were causing to the world

16   community are so well-known.  There is zero chance that you

17   didn't know how damaging these malwares were that were using

18   your service to perfect their software so that it wouldn't be

19   detected by the antivirus security companies who were all

20   working -- as you also are aware, this security industry has

21   grown enormously, and the number of companies that are

22   dedicated and the amounts of money that are dedicated by every

23   corporation to try and void a Target incident or a Citadel

24   incident, it's on the forefront of every business model today

25   in the world.

1        And you were aware of all that, and you chose to do

2   it.  And you didn't make a tremendous amount of money doing it,

3   but you were really good at it and you continued to perfect it.

4   And whenever you -- or several times during the e-mail

5   trafficking when you and Mr. Martisevs were talking, you were

6   saying, I'm still working, I'm still advancing the software

7   system.  And, you know, you did a terrific job at it.

8        So you caused enormous harm through aiding and

9   abetting these different hackers and the malware that they

10  perfected with your assistance.

11       So Ms. Carmichael hit the real issue here, and that's

12  what's a fair sentence given you as a person and the fact that

13  this is your first conviction, notwithstanding the length of

14  time that you have been involved in this enterprise.  And I

15  don't need to look at the 404(b) evidence to see that your

16  dedication to this unlawful enterprise is really disturbing,

17  the potential you have in the future if you are not deterred.

18  And there is also a need for general deterrence, but you

19  shouldn't be warehoused just because of a fear that you may get

20  out and go back into criminal enterprises.

21       So I'm looking at a young man who may make a decision

22  in the future who is going to do the right thing and work for

23  the right reasons, and I very much hope that that is the case.

24  But I don't have any confidence given what I know about you now

25  that that is definitely going to take place.  So deterrence is

1  necessary.  And also the seriousness of the offense, the

2  sentence must reflect that.

3         The disparity is the issue that is very real.  Every

4  case stands on its own.  The facts of every case are different

5  than in another case.  As the Government points out, some

6  people got 27 years for the behavior that they believe was in

7  the same nature as yours.  Others, Mr. Shames, he got, you

8  know, six months, but I think he was a very unique character.

9  Mr. Belorossov and the other Russian witness in our trial got

10 five years, and they got five years after they had signed

11 agreements to cooperate with the Government and had their

12 sentences reduced down to five years as a result of that.

13        I see the harm that you caused, as I have just gone

14 over, different, obviously, than that of the Citadel

15 perpetrators, but you were instead facilitating, aiding and

16 abetting enormous numbers of hackers.  So you are in a more

17 unique sentencing position.  But I find that the conduct is,

18 you know, very serious, went on for a significant length of

19 time.

20        And so, I don't think -- I think a sentence in excess

21 of those that Ms. Carmichael spoke of is necessary under the

22 3553 factors.  And that a significant sentence is necessary.

23 Not 420 months as the Government urges, but a significant

24 sentence.

25        On Count 1, I'm going to sentence you to 60 months.

1  On Counts 2 and 4, I am going to sentence to you 168 months.

2  Those sentences will run concurrently.

3          I will sentence you to three years of supervised

4  release.  A $300 special assessment.

5          I will not impose a fine or costs because I find you

6  are unable to afford them.

7          If you are deported, I will order that you not return

8  to the United States without lawful authority to do so.

9          If you are not deported, I will order that you be on

10  standard conditions of supervised release and participate in a

11  computer monitoring program.

12          I will give you credit for time served waiting

13  sentencing.

14          Ms. Carmichael, do you have a designation?

15          MS. CARMICHAEL:  Your Honor, we have two requests

16  with respect to designation.  First, that Your Honor could

17  recommend Fort Dix as the facility.

18          And second, that Your Honor could recommend that a

19  portion of Mr. Bondars' sentence be served in Latvia so that he

20  is able to be closer to his family under the Prisoner Transfer

21  Treaty.

22          THE COURT:  I am not going to recommend that.  I will

23  leave that to you to make that recommendation to the Bureau

24  when you are working with them.

25          All right.  Anything else in this matter?

1              MS. CARMICHAEL:  Yes, Your Honor.

2              THE COURT:  There is a forfeiture matter, yeah.

3              MS. CARMICHAEL:  Yes.  I am not sure whether Your

4     Honor wants to handle this -- this is just a logistical issue.

5     But should Mr. Bondars choose to appeal, he cannot afford an

6     attorney.  I do have a financial affidavit from him, and we

7     would ask the Court that I be able to be appointed to his case

8     for that purpose.

9              THE COURT:  I would appreciate it if you would take

10    the assignment on a court-appointed basis.  Thank you for do

11    so.

12             MS. CARMICHAEL:  Thank you, Your Honor.  Would you

13    like the financial affidavit at this time?

14             THE COURT:  Yes.  There was a notice of forfeiture

15    submitted.  And do you have any position on that at this time?

16             MS. CARMICHAEL:  We do, Your Honor.

17             MR. ELLIS:  Your Honor, we don't have any position on

18    the PayPal or the Paxum accounts.  I think there was evidence

19    in the trial regarding those.

20             Regarding the Bitcoin, the Government seems to be

21    proceeding on that the service in and of itself was illegal.

22    And we disagree with that as far as the evidence that came

23    through at trial.  We believe that this is a situation more

24    under section 981(a)(2)(B) where it was a lawful service used

25    in an illegal manner.

1          And, therefore, the Government would need to show by

2     a preponderance that specifically with regards to their

3     forfeiture request, the Bitcoin was used and is directly

4     traceable to a violation of section 1030.

5          I don't think there is any evidence that anyone ever

6     paid with Bitcoin or any evidence that there was any scan or

7     file that was used to commit a cyber attack or someone paid for

8     the scan with Bitcoin.

9          So I don't think the Government has met their burden

10    with regard to the Bitcoin.  However, we do recognize that the

11    Bitcoin could be considered substitute assets.  And just

12    depending on whatever award is awarded by the Court, it could

13    be taken, all of it or some of yet.

14         Yesterday, for the Court's information, Bitcoin was

15    worth 6,512.80, $6,512.80 as of yesterday.

16         And then regarding lastly, Your Honor, regarding the

17    money judgment.  Reading the Government's brief, it just seems

18    like they can't possibly meet their burden in that regard, it

19    just seems highly speculative.  The Government is just making

20    guesses about the proportion of clients that paid monthly

21    versus per scan.  I don't think there is enough information for

22    the Court to make a finding for a money judgment.

23         So we would ask the Court not to make a finding for a

24    money judgment at this time.

25         THE COURT:  All right, thank you.

1          The Government want to be heard?

2          MS. FONG:  Yes, Your Honor.  With respect to the

3    Bitcoin payments, every single transaction that went into the

4    one Bitcoin wallet that we put forth in the forfeiture papers

5    was a Scan4you transaction.  And there were three places where

6    we found evidence of that Bitcoin wallet.

7          First the Bitcoin wallet, evidence of that was found

8    on Mr. Bondars' Cooler Master computer that was seized from his

9    residence in Latvia.

10         Second, within his computer there was a ledger that

11   he maintained that detailed the Bitcoin transactions,

12   specifically for Scan4you customers.

13         Third, we know that Bitcoin was a method of payment

14   for Scan4you customers.  Based on the evidence we presented at

15   trial, the Web site showed methods of payment, and Bitcoin was

16   one of them.

17         Turning to the ways that the Government has estimated

18   the amount that should go into the money judgment.  The case

19   law is clear that forfeiture is mandatory in this case.  The

20   Government only needs to prove by a preponderance reasonable

21   estimates of criminal proceeds.  And here the $4,000 figure of

22   profits per month was an estimate that Mr. Bondars himself

23   provided to the Government, and we cited that in our papers.

24         So we provided a number of different ways that the

25   Court can come to a reasonable figure for forfeiture.  We have

1  put forth those numbers and figures to the Probation Office,

2  and they have adopted some of our calculations.

3          THE COURT:  All right.  Thank you, Ms. Fong.

4          All right, I will look at the forfeiture --

5          MR. ELLIS:  Your Honor -- I am sorry.

6          THE COURT:  Yes, Mr. Ellis.

7          MR. ELLIS:  I just remembered one point based on Ms.

8  Fong's argument.

9          I went back and read Mr. Bondars' statement last

10 night.  And what he actually said was during the last few years

11 of the service he thought it was averaging 4,000.  So that was

12 not a lifetime estimate.

13         THE COURT:  Okay.  All right, I will look at your 891

14 arguments as well.  And I will -- if I need any further

15 information on that, I will let you know.

16         All right, anything else in this matter?

17         MR. DWYER:  Yes, Your Honor, just the restitution

18 request.  Target had put forth an affidavit seeking

19 restitution.  I have spoke with defense counsel.  We are

20 hopeful that we can at least come to some sort of arrangement,

21 something that they won't necessarily agree to, but potentially

22 not object to.  And working with Target as well to hopefully

23 work something out, and we can file papers on that.

24         THE COURT:  All right.  Do you have any inkling as to

25 when that would occur?

1          MR. DWYER:  I think we could do it within 30 days if

2    that is acceptable to the Court.

3          THE COURT:  Yes, that would be great.  I just don't

4    want to lose track of it given the restitution order, the

5    statutory limitations there.

6          All right, that concludes our criminal docket.  We

7    will take a brief recess, and we will come back with the civil

8    docket.

9          Thank you, counsel.

10   ------------------------------------------------
                     HEARING CONCLUDED

11

12

13

14

15

16

17

18

19

20          I certify that the foregoing is a true and

21       accurate transcription of my stenographic notes.

22

23

24          _____/s/  Norman B. Linnell_____
                Norman B. Linnell, RPR, CM, VCE, FCRR

25